## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JANE DOE,

        Plaintiff,

    v.                             No.

SCHOOL OF THE ART INSTITUTE OF
CHICAGO, JOHN PHILLIPS, LISA
WAINWRIGHT, AMANDA DASILVA,
MICHAEL NICOLAI, and BETH WRIGHT

        Defendants.                 Plaintiff Demands Trial By Jury

## COMPLAINT

Plaintiff JANE DOE, through her undersigned counsel, seeks redress against Defendants SCHOOL OF THE ART INSTITUTE OF CHICAGO ("SAIC"), JOHN PHILLIPS, LISA WAINWRIGHT, BETH WRIGHT, AMANDA DASILVA, and MICHAEL NICOLAI, and states:

## INTRODUCTION

1.    When Jane Doe was a student at SAIC in 2015-2016, she was repeatedly subjected to extreme sex discrimination, harassment, sexual violence, retaliation, and other forms of emotional and physical abuse and injury by John Phillips, a member of the faculty at SAIC and Doe's direct advisor. Before he was appointed as Doe's advisor, Phillips had previously sexually victimized other students at SAIC. SAIC officials knew of Phillips' past actions, and were aware that Doe was receiving services from SAIC as a student with disabilities.

## JURISDICTION

2.      This Court has original subject matter jurisdiction over Plaintiff's federal

claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 29 U.S.C. § 626(c). This Court

has supplemental jurisdiction over the Illinois state claims, pursuant to 28 U.S.C. § 1367,

as it is part of the same case or controversy as the federal claims.

3.      Venue is proper in this judicial district in accordance with 28 U.S.C. §

1391, as all Defendants either reside in this District or have their principle place of

business in this District, and all events giving rise to Plaintiff's claims occurred within

this District.

## The Parties

4.      Plaintiff JANE DOE is a resident of Massachusetts. The vast majority of

events set forth herein occurred when Doe resided in Chicago, Illinois, Cook County,

within this judicial district.

5.      Defendant SAIC is a private not-for-profit college. It is an accredited post-

secondary institution of higher learning, which provides both graduate and

undergraduate study. This curriculum provides for the preparation of visual artists,

teachers of art, designers, and others in areas that include written, spoken, and media

formats. In fiscal year 2016, average academic year full-time-equivalent enrollment of

degree-seeking students was 3,072 including international students from 50 countries.

6.      SAIC is a place of public accommodation, receives federal funding and

financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to

Title IX. SAIC receives federal financial aid funding from the Department of Education under the following programs: Federal Pell Grant Program, Federal Supplemental Educational Opportunity Grants Program, and the Federal Work Study Program.

7.      Defendant JOHN PHILLIPS, is a resident of Chicago, Illinois in Cook County, Illinois. At all relevant times, Defendant Phillips was a faculty member at SAIC.

8.      Defendant LISA WAINWRIGHT, is a resident of Chicago, Illinois in Cook County, Illinois. At all relevant times, Defendant Wainwright was the Dean of Faculty, Vice President of Academic Affairs at SAIC.

9.      Defendant BETH WRIGHT, is a resident of Chicago, Illinois in Cook County, Illinois. At all relevant times, Defendant Wright was the Chair of Faculty at SAIC.

10.      Defendant AMANDA DASILVA, is a resident of Chicago, Illinois in Cook County, Illinois. At all relevant times, Defendant DaSilva was the Director of Student Conflict Resolution.

11.      Defendant MICHAEL NICOLAI, is a resident of Chicago, Illinois in Cook County, Illinois. At all relevant times, Defendant Nicolai was the Vice President of Human Resources, and Title IX Coordinator.

### Facts Upon Which Plaintiffs' Claims Are Based

12.      Plaintiff JANE DOE ("Doe") began her degree program at SAIC in September 2015.

13.     Doe's dream was to be an art professor. She has loved school and did well in college. She graduated *summa cum laude* in an honors program in undergraduate school and went on to complete a post-graduate program at Brandeis University in order to fulfill her goal of getting accepted to a more prestigious, nationally known art school like SAIC.

14.     Doe has a psychological disability including diagnoses of attention deficit/ hyperactivity disorder, anxiety, panic attacks, insomnia, impaired focus, and depression. Before Doe entered SAIC as a student, SAIC was aware of Doe's disability as Doe had a 504 plan in place relating to her disability.

15.     In late 2015, SAIC was aware that Doe's disabilities were causing her stress and agitation and that she was under a doctor's care.

16.     In 2016, SAIC assigned Defendant John Phillips to be Doe's one-on-one advisor, despite the fact that SAIC was aware of Doe's disability, was aware that Phillips was under investigation by SAIC for discrimination against another student, and was aware that Phillips had a history of sexual misconduct with students.

17.     Phillips directly supervised Doe and had direct control over her academic career.

18.     On February 4, 2016, Doe met with Defendant John Phillips for the first time.

19.     During this initial meeting, Phillips told Doe he was in a four-year relationship with an undergrad student, and his wife (who is also a professor at SAIC)

found out and they were getting divorced. Phillips recommended that Doe watch a movie about a teacher who has a sexual relationship with a student at a boarding school and had Doe read a magazine known for articles about sex and violence in art. Phillips told Doe that he was only interested in her art if it depicted women or sexual conduct.

20.     During this initial meeting, Doe discussed with Phillips that she had a psychological disability.

21.     The advising meeting lasted three hours. Immediately after the meeting, Phillips began sending Doe images of paintings depicting women, violence, and sex.

22.     On February 12, 2016, Phillips invited Doe to his apartment. Doe went to Phillips' apartment with a friend because she was worried about going alone. Phillips provided the students with alcohol and drugs. Phillips engaged in sexually abusive conduct with Doe and Doe's friend. Phillips photographed the two students naked.

23.     On February 14, 2016, Phillips apologized to Doe for his conduct on February 12. Phillips told Doe that he was going to commit suicide by hanging himself and showed her a rope at his apartment. Doe informed Phillips that she was going to the symphony and encouraged him to not kill himself. Phillips asked Doe to come to his apartment. Doe feared that Phillips would commit suicide and agreed to go to his apartment after the symphony.

24.     When Doe arrived at Phillips' apartment, he gave Doe alcohol and engaged in sexual activity with her.

25.     The next day Phillips texted Doe and told her not to tell her friends about him. Phillips asked Doe to come to his apartment again. Doe did not go.

26.     Phillips' began texting and calling Doe every day. Phillips also began going to Doe's studio. Phillips insisted that Doe come to his apartment. Doe saw Phillips at his apartment approximately 10 times between February 15, 2016 and the end of February. Phillips engaged in sexual activity with Doe nearly every time she was at his apartment.

27.     In early March 2016, Philips sent Doe a picture of people jumping off of buildings, insinuating that he was suicidal. Phillips continued to insist that Doe come to his apartment. Doe saw Phillips almost every day in March. Phillips engaged in sexual activity with Doe nearly every time she was at his apartment.

28.     As a result of Defendant Phillips' conduct, Doe became depressed, had trouble concentrating and painting, and struggled to participate in educational activities.

29.     During April 2016, Doe stayed at Phillips' apartment for an extended period. Doe's friend became worried about her; he could not find her and did not know whether she was safe. Phillips told Doe to not tell her friend about him.

30.     In May 2016, Doe barely left Phillips' apartment. Phillips told Doe to not talk to her friends anymore. Phillips told Doe not to talk to her mother. Phillips often took Doe's phone and prevented her from communicating with her mother. Phillips

told Doe that her mother did not know how to take care of her and he could take care of her better.

31.     After the semester, Doe temporarily returned to Massachusetts with her mother. Philips told Doe to delete his number and all of his texts because he was worried about her mom finding out about his actions. Philips told Doe that she could no longer have contact with him and asked if he should get a lawyer to save his job. Phillips told Doe that he would be back on suicide watch if he lost his job.

32.     In June 2016, Doe returned to Chicago for a summer course, during which time she planned to stay at a hotel.

33.     Phillips went to the hotel and persuaded Doe to move in with him. Phillips told Doe to stop communicating with her mother. Once Phillips persuaded Doe to stay at his apartment, Phillips told Doe that he did not want her leaving the apartment. Philips was very abusive. On one occasion he locked her out of the rooftop garden as punishment for leaving a door open.

34.     Phillips manipulated and controlled Doe by controlling her movements, controlling who she could talk to, controlling what she could wear, terrifying her into committing sex acts, incapacitating her with drugs and alcohol despite knowledge of her disability and the fact that she was taking prescription medications that should not be combined with the drugs and alcohol he was giving her, sexually violating her and taking sexually explicit video and photographs of her while her capacity was

diminished, and disseminating naked images of her without her consent and with the intent to cause her distress.

35.    On several occasions, Philips took sexually inappropriate pictures of Doe. He has repeatedly threatened to release them in retaliation for her reporting his misconduct.

36.    Doe lost almost thirty pounds during the period when Phillips was abusing her. There were days that she was unable to get out of bed. Doe missed classes, workshops, and other educational programs and activities.

37.    On June 19, 2016, Doe found naked photographs of other students on Phillips' computer. Doe confronted Phillips about the photographs and Phillips became angry with Doe and locked her out of the apartment.

38.    Doe texted her mother, "HELP," then her phone died.

39.    After receiving the plea for help from Doe, Doe's mother called Doe's friends to help find her.

40.    On June 20, 2016, after learning that Doe was at Phillips' apartment, Doe's mother contacted Defendant Wainwright and told her she was gravely concern about her daughter's well-being. Doe's mother explained that Phillips was involved in an inappropriate sexual relationship with Doe.

41.    Defendant Wainwright refused to discuss the matter with Doe's mother citing the Family Educational Rights and Privacy Act, (FERPA) even though Doe had

previously signed a FERPA waiver allowing SAIC officials to talk with her mother due to her disability.

42.     After Doe's mother told Wainwright about Phillips' inappropriate relationship with Doe, Wainwright did not report the matter to any SAIC official, as she was required to do. Instead, she called Phillips and warned him that Doe's mother had called SAIC and was looking for Doe. Defendant Wainwright told Phillips that nothing would happen to him as long as Doe did not file a formal complaint.

43.     After SAIC refused to take action in response to Doe's mother's report to Wainwright, Doe's mother called the police and asked them to perform a wellness check on Doe. The police went to Phillips' apartment and found Doe dirty and covered in urine.

44.     Before police arrived, Phillips instructed Doe not to say anything to the police. Phillips answered all the police questions himself. After the police left, Phillips was very angry at Doe. Doe left the apartment because of her fear of Phillips.

45.     On June 20, 2016, one day after Doe's mother called and reported Phillips' inappropriate relationship with Doe, SAIC locked Doe out of her art studio, access to which was necessary for her education.

46.     The same day, Chair of Faculty Beth Wright emailed Doe, forwarding her the SAIC's policy for Consensual Faculty/Student Relationships.

47.     Later that night, Phillips sent a text message to Doe, stating: "you fucked me and sacrificed my life – you need to do everything in your power to undo the damage you've done."

48.     The next day, on June 21, 2016, Phillips told Doe that she needed to make sure to report that the relationship was consensual, otherwise, he would lose his job.

49.     On June 21, 2016, Doe met with Defendant Wright and told her that she was afraid of retaliation from Phillips and wanted protection from him.

50.     Immediately after Doe's meeting with Defendant Wright, Doe observed Defendant Phillips meeting with Wright. Doe saw Wright show Phillips the notes that Wright had taken during her meeting with Doe.

51.     Later that day, at approximately 4:30 PM, Defendant Wright called Doe and stated that she was emailing a "mutual" no contact order that she said was put in place under the direction of the Dean.

52.     Doe became very upset and adamantly expressed to Wright that the mutual no contact order was not going to protect her and she was very afraid of Phillips.

53.     On June 21, 2016, Doe complained to SAIC about the handling of the situation with Phillips. Doe expressed that she did not believe Wainwright was impartial because of her friendship with Phillips.

54.     On June 22, 2016, Defendant Phillips violated the no contact order by entering Doe's dormitory and leaving her a voicemail message, which scared her.

10

55.     On June 23, 2016, Doe met with Defendant Wright and Defendant DaSilva who impressed upon Doe that the policies at SAIC were only a suggestion for the faculty.

56.     During this meeting, Wright and DaSilva assisted Phillips in violating the no contact order by giving Doe a stapled brown bag in which Phillips had placed objects that would remind Doe of the abuse she suffered. Doe opened the bag in front of Wright and DaSilva and fell to the floor crying.

57.     On June 24, 2016, Phillips again violated the no-contact order. He coerced Doe to email Defendant Wright stating that her relationship with Phillips was consensual and she did not wish to pursue a complaint. Doe was terrified that she would never be able to escape Phillips' abusive and controlling conduct.

58.     In early July, Defendant Phillips continued to intimidate and scare Doe by threatening to disseminate naked images of her without her consent and insisting that she communicate with him. Phillips manipulated Doe and threatened that she had to do everything in her power to save his job or he would kill himself. Phillips told Doe she would never be able to live with herself if he committed suicide.

59.     In late July, Doe attempted to get a new studio space since she had been locked out of her original space since June. She requested to move into a different available studio space because she believed it would retraumatize her to work in the studio where Phillips served as her advisor. Defendant DaSilva put off meetings and discussions with Doe regarding the new studio space. New space eventually became

available, and on the day Doe was supposed to move, DaSilva did not show up to assist her, forcing Doe to move her studio without the SAIC's assistance.

60.     On July 30, Phillips violated the no-contact order again by texting Doe. Doe reported the violation to Wright and informed her that she would call the police if SAIC could not protect her from Phillips.

61.     On or about August 3, 2016, Doe contacted Dawn Henson, the Deputy Title IX Coordinator, to ask for help because Wright and Wainwright were ineffective and she was continuing to suffer harm.

62.     Henson did not help, but instead told Doe to reach out to other SAIC officials, including the Dean on Call. This was very traumatizing for Doe as she was unable to reach people, causing even more delays, and she was made to repeatedly describe Phillips' abusive conduct to strangers.

63.     Henson then discussed Doe's case with Wainwright and reported to Doe that Wainwright had assigned Wright to investigate the matter. Doe was very distraught to learn this information as she had informed SAIC officials in June that Wainwright had a conflict of interest, as she was a close personal friend of Phillips.

64.     In August 2016, SAIC terminated Phillips' employment.

65.     After Phillips' employment was terminated, Plaintiff was criticized and ostracized by classmates blaming her for Phillips' termination. SAIC did not take any steps to protect Plaintiff or prevent the retaliation.

66.     On August 7, 2016, Phillips contacted Doe's mother and asked to talk about the situation. Doe's mother declined to speak to Phillips and contacted Defendant Wright to report that Phillips had contacted her. She asked SAIC to stop Phillips from contacting her. Doe's mother was terrified of Phillips.

67.     In early August 2016, Phillips again went to Doe's dormitory. He sent her text pictures from inside her lobby to show that he was there. Doe reported this violation to the SAIC, after which, SAIC moved Doe to a hotel for a week, where she did not have access to food or laundry facilities.

68.     Doe and her mother attempted to work with Dawn Henson, in order to find a safer housing alternative in an SAIC dormitory. SAIC's responded that they were "working on it," even though there were many empty dorm rooms.

69.     Not having safe housing arrangements caused Doe severe stress and anxiety, which exacerbated her PTSD and other disabilities and caused her to be unable to sleep or concentrate on her classes. SAIC was aware of Doe's suffering but did not inform Doe's professors that she needed accommodations.

70.     On August 17, 2016, because SAIC was not protecting her or providing effective assistance, Doe went to court and was granted an emergency Civil No Contact Order against Phillips.

71.     On August 19, 2016, Doe sent a letter to Mike Nicolai, the Title IX Coordinator, requesting several accommodations including changing advisors, moving her art studio with assistance and preparing it for the next occupant because it was too

traumatizing to be in the studio alone, updating her disability plan, tutoring and assistance completing the Fulbright scholarship application process, and acquiring new housing.

72. On August 23, 2016, Phillips contacted Doe through his legal counsel and threatened Doe with criminal charges for pursuing her complaint against Phillips and obtaining a Civil No Contact Order.

73. On August 30, 2016, Doe reported to Dawn Henson that Phillips was threatening her with a lawsuit and that she was emotionally traumatized and drained and suffering from severe anxiety because of SAIC's lack of response and the ongoing harassment and retaliation.

74. In September 2016, Doe became emotionally incapacitated because of the retaliation and ongoing harassment. She took a leave of absence from SAIC and returned to Boston.

75. On September 13, 2016, Phillips again threatened Doe through his legal counsel. Philips threatened to sue Doe if she did not recant her allegations of misconduct and insist that SAIC rehire him.

76. Phillips continued to contact Doe despite the no-contact order, including texting her on September 18, 2016 and September 20, 2016. Doe was intimidated by Phillips' constant communications, which were threatening attempts to silence her.

77. On September 30, 2016, Doe was on her computer when a message appeared on her Facebook page from Phillips requesting $.99 for assistance with legal fees. Doe felt threatened and intimidated.

78. That same day, Philips sent a message to Doe via Facebook with a picture of his lawyer posing with then presidential candidate Hillary Clinton. Phillips told Doe that his attorney has friends in her hometown in Massachusetts. Phillips made intimidating comments about his attorney's power to defeat Doe.

79. SAIC was aware of Phillips' ongoing retaliation and harassment but did not take steps to stop his harassment and retaliation or to protect Doe from Phillips.

80. On October 17, 2016, SAIC issued a decision letter relating to its Title IX investigation. The letter stated that SAIC had terminated Phillips' employment and provided Doe with support services, so they did not need to further investigate her complaints and could do nothing about the retaliation. Doe appealed SAIC's decision, which was denied.

81. On August 30, 2017, Doe filed a complaint with the Office for Civil Rights at the Department of Education, asserting numerous Title IX violations. The complaint was accepted for investigation, and is currently pending.

82. As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to

reputation, harm to career, and harm to her education, and other consequential damages, including, but not limited to the following:

    a. Doe has required ongoing counseling and elevated levels of medication to address her injuries caused by Defendants' actions and inactions;

    b. Doe has one year of graduate school at SAIC that no other school will credit and she will have to re-do;

    c. Doe has incurred legal expenses in order to enforce her rights and the rights of others;

    d. Doe expended additional sums on housing in order to provide for her safety because of Defendants' inactions;

    e. Doe has debt relating to tuition and board from the year that she was at SAIC; and

    f. Doe has been forced to seek alternative educational opportunities because she is unable to return to SAIC.

## COUNT I
### Gender Violence Act- 740 ILCS 82/ *et seq.*

83.    Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

84.    From February 2016 through June 2016, Phillips physically touched Doe's body in an insulting, provoking, improper, and sexual nature.

85. Phillips committed an act of violence or physical aggression against Doe because of sex. Said act of violence and/or physical aggression constituted a battery under Illinois law.

86. Phillips committed a physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under Illinois law.

87. SAIC, through its officials, including but not limited to the individual Defendants, encouraged or assisted Phillips' repeated acts of gender violence.

88. As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

**COUNT II**
**TITLE IX, 20 U.S.C. §1681, *et. seq.*, (intentional discrimination)**

89. Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

90. Title IX states "[n]o person shall, on the basis of sex be . . . subjected to discrimination." 34 C.F.R. part 106.31(a). A funding recipient shall not "subject any person to separate or different rules of behavior, sanctions, or other treatment;" or otherwise "limit any person in the enjoyment of any right, privilege, advantage or

opportunity;" "treat one person differently from another" in "determining whether such person satisfies any requirement of condition for the provision of such aid, benefit, or service;" or "provide different aid, benefits or services in a different manner;" 34 C.F.R. part 106.31(b)(1-7).

91.    The willful actions of Defendants constitute intentional discrimination under Title IX.

92.    Defendants intentionally discriminated against Plaintiff on the basis of her sex in that Plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under a federally-assisted program or activity.

93.    Similarly situated individuals were treated differently because of, or on the basis of their sex.

94.    SAIC, through its officials, including but not limited to the individual Defendants, handled Plaintiff's complaint differently than the complaints of others on the basis of her sex.

95.    Defendant SAIC has engaged in a policy, pattern, and practice of discrimination on the basis of sex.

96.    As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to

reputation, harm to career, and harm to her education, and other consequential damages.

## COUNT III
### TITLE IX, 20 U.S.C. §1681, *et. seq.*,
### (Deliberate indifference discrimination-hostile environment)

97.     Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

98.     The sex-based harm suffered by Doe was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits.

99.     SAIC, through its officials, including but not limited to the individual Defendants, subjected Doe to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because:

    a.  Doe was a member of the class intended to be protected by Title IX;

    b.  Doe was subjected to sexual harassment in the form of a sexual abuse by a faculty member;

    c.  She was subjected to harassment based on her sex; and

    d.  She was subjected to a hostile educational environment created by SAIC's unlawful policies and procedures and failure to properly investigate and/or address Phillips' actions.

100.    SAIC, Wainwright, DaSilva, Nicolai, and Wright had actual knowledge of the sexual abuse and the retaliatory actions against Plaintiff, created by their failure to

promptly, equitably, and effectively investigate and address Phillips' actions in accordance with the law.

101.    Wainwright attempted to conceal Phillips' conduct and prevent SAIC from responding to and addressing Phillips' actions by alerting Phillips that Doe's mother had reported his misconduct, and telling him that he would not get in trouble so long as Doe did not make a formal complaint.

102.    SAIC's, through its officials, including but not limited to the individual Defendants, failure to promptly, equitably, and effectively respond to and address Phillips' action resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in SAIC's academic programs in violation of Title IX.

103.    Defendants acted with deliberate indifference toward Plaintiff.

104.    Defendants persisted in their actions and inactions even after they had actual knowledge of the harms suffered by Plaintiff.

105.    Defendants' actions as described herein made Plaintiff vulnerable to that harassment that she experienced.

106.    As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to

reputation, harm to career, and harm to her education, and other consequential damages.

**COUNT IV**
**TITLE IX, 20 U.S.C. §1681, *et. seq.*,**
**(discrimination - *quid pro quo*)**

107.    Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

108.    The sex-based harm suffered by Doe consisted of quid pro quo discrimination because Phillips was Doe's direct advisor who had control over her education. Phillips used his position and authority and power over Doe to extract sexual favors and activities for his advantage and pleasure. Phillips was employed by SAIC and was granted power over Doe's education by SAIC. Phillips actions deprived Plaintiff of access to educational opportunities and subjected Doe to sex-based harm that negatively affected her access to educational programs and activities.

109.    SAIC, Wainwright, DaSilva, Nicolai, and Wright had actual knowledge of the sex-based harm and retaliatory actions against Plaintiff.

110.    SAIC is responsible for Phillips' quid pro quo discriminatory actions because:

    a.   Doe was a member of the class intended to be protected by Title IX;

    b.   Doe was a student subjected to sex-based harm by an SAIC faculty member with direct supervisory control over Doe, who was given that position of authority over Doe by SAIC; and

c. Doe was subjected to sex-based harm because of SAIC's unlawful policies and procedures and failure to properly investigate and/or address Phillips' actions and past similar misconduct.

111. By his actions, Phillips caused Doe great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, and other consequential damages.

112. As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

**COUNT V**
**TITLE IX, 20 U.S.C. §1681, *et. seq.*,**
**(intentional discrimination-discriminatory policies)**

113. Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

114. Title IX, 20 U.S.C. §1681 *et seq.*, requires funding recipients to provide equal educational opportunities and forbids them to discriminate on the basis of sex. Title IX also forbids funding recipients to have policies that subject sex-based harms to separate or different treatment.

115.    Title IX regulations prohibit the "use or distribut[ion of] a publication, which suggests by text or illustration that such school treats applicants, students or employees differently on the basis of sex" 34 C.F.R. part 106.9(b)(2), and mandate that funding recipients "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action, which would be prohibited by Title IX." 34 C.F.R. part 106.8(b).

116.    At all relevant times, SAIC had policies in place that were not compliant with Title IX, were facially discriminatory on the basis of sex, and that subjected sex-based harms to separate and different treatment compared to harms based on other protected class categories.

117.    SAIC, through its officials, including but not limited to the individual Defendants, applied definitions of offenses more onerous than those required by Title IX (unwelcome and based on sex) to assess Doe's case.

118.    SAIC, through its officials, including but not limited to the individual Defendants, unlawfully subjected Doe's Title IX matter to separate and different treatment compared to the treatment afforded students who suffer harms based on other protected class categories, such as race and national origin.

119.    SAIC, through its officials, including but not limited to the individual Defendants, engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from

seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

120.     This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

121.     Doe has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant SAIC's deliberate indifference to her rights under Title IX.

122.     On August 30, 2017, Doe filed a complaint with the OCR at the DOE asserting numerous violations of rights under Title IX. The complaint was accepted for investigation, and is currently pending.

123.     Doe's OCR complaint alleged that SAIC had facially discriminatory policies, and had failed to promptly, equitably, effectively, and appropriately respond to Phillips' actions, resulting in Doe, on the basis of sex, being excluded from participation in, being denied the benefits of, or being subjected to discrimination in SAIC education programs or activities in violation of the Title IX implementing regulation.

124.     Defendants Wainwright, DaSilva, Nicolai, and Wright had the authority to take remedial action to correct the sex-based harassment.

125.    SAIC's, through its officials, including but not limited to the individual Defendants, actions and inactions will cause reasonable students in Plaintiff's circumstances to be chilled from reporting sex-based harms.

126.    Doe has required ongoing counseling and elevated levels of medication to address her injuries caused by Defendants' actions and inactions.

127.    Doe has also been damaged by missed educational opportunities and future earning capabilities.

128.    SAIC had the capacity to adopt lawful policies and procedures prior to 2016, to ensure the fully equal treatment of sex-based harms and to prevent all forms of sex discrimination, including sexual assault and exploitation by faculty.

129.    Despite SAIC's knowledge of multiple reports of Phillips' misconduct prior to the onset of Plaintiff's suffering, SAIC, by and through its board members, administrators, employees and agents, failed to adopt lawful policies and procedures.

130.    SAIC had a pattern or practice of subjecting sex-based harm to separate, different and worse treatment than other civil rights harms by:

    a.  Ignoring and minimizing reports of sexual misconduct, including sexual harassment and sexual abuse, despite an ongoing danger to female students at SAIC;

    b.  Withholding and/or failing to properly document complaints received concerning sexual misconduct;

c. Failing to communicate any precautions, directives or educational materials that might be utilized to identify whether or not inappropriate conduct occurred between any student/faculty member, whether generally or specifically in relation to Phillips; and

d. Failing to otherwise institute corrective action designed to reduce the risk of harm and foreseeable acts of sex-based harm.

131. As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

**COUNT VI**
**TITLE IX, 20 U.S.C. §1681, *et. seq.*,**
**(retaliation)**

132. Doe restates and realleges by reference the paragraphs above as though fully set forth herein.

133. Title IX provides that "[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title IX], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subpart."

26

134.     After Phillips' sexual abuse was reported to SAIC officials, Phillips began retaliating against Doe by, inter alia, contacting her, threatening to commit suicide, threatening to sue her, sending her threatening and intimidating messages by text and through social media, showing up at her dorm room, having SAIC officials provide threatening items to Doe in a paper bag, and contacting her mother.

135.     SAIC, through its officials, including but not limited to the individual Defendants, retaliated against Plaintiff, and or failed to stop the retaliation, for her complaints against Phillips by locking her out of her studio, failing to provide needed disability resources to her, colluding with Phillips to prevent her from making further complaints, enabling Phillips to contact Plaintiff by delivering a bag of items to Doe on behalf of Phillips, and making the Title IX process needlessly complicated and difficult which they knew distressed Plaintiff.

136.     As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

**COUNT VII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

137.    Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

138.    The acts of sexual abuse against the female students, including Doe, were extreme and outrageous.

139.    SAIC, through its officials, including but not limited to the individual Defendants, either intended to cause or recklessly or consciously disregarded the probability of causing emotional distress to Doe.

140.    Doe suffered severe or extreme emotional distress as a result of Defendants' conduct.

141.    As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

**COUNT VIII**
**WILLFUL AND WANTON CONDUCT**

142.    Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

143. SAIC, through its officials, including but not limited to the individual Defendants, knew or should have known that its failure to properly investigate and protect students from Phillips would likely result in injury to Doe.

144. SAIC, through its officials, including but not limited to the individual Defendants, consciously disregarded a substantial risk of harm it knew or should have known existed towards Doe or its other students.

145. SAIC, through its officials, including but not limited to the individual Defendants, engaged in willful and wanton conduct by consciously disregarding a known risk of harm to Doe by failing to investigate and/or supervise Phillips, and by allowing Phillips unfettered access to female students despite the previous sexual misconduct by Phillips.

146. As a direct and proximate cause of SAIC's indifference and/or conscious disregard for the safety of it students by failing to control or supervise Phillips, Doe sustained personal, emotional and pecuniary injuries.

147. As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

## COUNT IX
## FAILURE TO SUPERVISE

148.    Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

149.    SAIC, through its board members, administrators, faculty, employees and agents, including the individual Defendants, was aware of Phillips' propensity to commit acts of sexual harassment and abuse or misconduct against female students, including Doe, making Phillips' future misconduct and the harm likely to result from such conduct reasonably foreseeable.

150.    SAIC, through its officials, including but not limited to the individual Defendants, knew Phillips was utilizing his position on the faculty and his access to school and female students to engage in predatory behavior including sexual grooming, sexual harassment and sexual abuse against female students.

151.    At all relevant times herein, Doe was under the direct and immediate control of Phillips as her instructor and advisor.

152.    SAIC, through its officials, including but not limited to the individual Defendants, had a duty to act in a reasonably prudent manner in the supervision of its faculty, advisors, and administrators, including Phillips, and to ensure that Phillips and other employees acted in the best interest of the health, safety and welfare of SAIC's students.

153.     SAIC, by and through its agents and/or employees, acted with a reckless and conscious disregard for the safety and welfare of female students, including Doe, and breached its duties owed to Doe by committing one or more of the following acts or omissions:

a.   Allowing an environment wherein Phillips could utilize school property, during and after school hours, without supervision of his activities, and engage in the sex-based misconduct of Doe and other students;

b.   Failing to protect Doe despite prior knowledge that Phillips had previously committed other acts of sex-based misconduct against other female students;

c.   Failing to document complaints involving Phillips;

d.   Failing to warn and/or disclose to the SAIC community, including Doe, knowledge of Phillips' past sex-based misconduct;

e.   Withholding information from the campus community, including Doe, concerning prior complaints of sexual harassment and sexual abuse perpetrated on female students by Phillips; and

f.   Failing to warn and/or disclose to individual female students of the SAIC, including Doe, of the complaints received against Phillips.

154.     As a result of SAIC's breach, Phillips, SAIC, and the individual defendants proximately caused injury to Doe.

155. As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

**COUNT X**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

156. Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

157. Before Phillips initiated the sexual abuse of Doe, Phillips engaged in a pattern of inappropriate grooming, sexual harassment, and sexual abuse of at least one other female student which SAIC and the individual Defendants were aware of.

158. None of the agents, servants, and employees of SAIC undertook appropriate measures to prohibit and prevent Phillips from engaging in his inappropriate sex-based misconduct with other students.

159. SAIC, through its officials, including but not limited to the individual Defendants, knew, or should have known, Phillips was engaging in inappropriate sex-based misconduct with students at SAIC.

160. SAIC's, through its officials, including but not limited to the individual Defendants, failure to properly handle reports concerning Phillips' sexual grooming,

sexual misconduct, and sexual abuse of students ultimately led to and precipitated in causing his sex-based harm of Doe.

161.    SAIC, through its officials, including but not limited to the individual Defendants, owes a duty to its students, including female students such as Doe, to provide and employ appropriate educational services and competent faculty and counselors and safeguard its students from harmful conduct perpetrated by SAIC faculty.

162.    SAIC, through its officials, including but not limited to the individual Defendants, owed a duty to its female students, including Doe, to provide a safe and secure environment for students' academic pursuits.

163.    The SAIC breached these duties by:

      a.   Allowing an environment wherein Phillips could utilize school property, during and after school hours, without supervision, and engage in the sexual abuse of Doe;

      b.   Failing to protect Doe despite its prior knowledge that Phillips was involved in sexual grooming, sexual harassment and sexual abuse of other female students;

      c.   Failing to document complaints received against Phillips in accordance with SAIC policies; and

      d.   Failing to warn and/or disclose to individual female students of SAIC, including Doe, of the complaints received against Phillips.

164.     As a result of SAIC's aforementioned breach, Defendants Phillips and SAIC proximately caused injury to Doe.

165.     Plaintiff suffered emotional distress as a result of Defendants' conduct which is severe, extreme, and long lasting.

166.     As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

## COUNT XI
## NEGLIGENCE

167.     Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

168.     SAIC, through its officials, including but not limited to the individual Defendants, owed Doe a duty to provide reasonably safe and appropriate educational services.

169.     SAIC, through its officials, including but not limited to the individual Defendants, breached its duty by engaging in one or more of the following negligent acts:

a.  Failing to conduct a thorough investigation into previous misconduct involving Phillips relating to inappropriate sex-based words and actions;

b.  Failing to warn Doe of Phillips's dangerous propensities towards female students;

c.  Failing to adequately supervise Phillips despite the fact that SAIC officials knew or should have known that Phillips had been sexually inappropriate toward female students; and

d.  Otherwise failing to protect Doe from Phillips despite knowledge that Phillips had previously engaged in sex-based misconduct with other female students.

170.   As a direct and proximate cause and result of one or more of the aforesaid negligent acts, the Plaintiff, Doe, sustained personal, emotional, and pecuniary injuries.

171.   As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

## COUNT XII
## NEGLIGENT RETENTION

172.    Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

173.    While an employee of Defendant SAIC, SAIC, through its officials, including but not limited to the individual Defendants, was aware of previous complaints made by women against Defendant Phillips relating to his appropriate sexual conduct involving female students.

174.    Defendant SAIC either knew or should have known of the sexually dangerous propensities of Defendant Phillips after learning of Phillips' previous inappropriate relationship with a student and complaints by other female students.

175.    The violent and sexually dangerous propensities of Defendant Phillips made Phillips unfit for the job and created a foreseeable danger to others.

176.    The unfitness of Phillips was a proximate cause of Doe's injuries.

177.    The conduct of SAIC, through its officials, including but not limited to the individual Defendants, in intentionally hiring and retaining Defendant Phillips was willful and wanton as it was in reckless disregard of the safety of its students.

178.    As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and

suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

## COUNT XIII
## NEGLIGENT FAILURE TO CONTROL CONDUCT OF PHILLIPS
### (Restatement of Torts, 2d §317)

179.    Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

180.    SAIC, through its officials, including but not limited to the individual Defendants, was in charge of providing an education to students, including Plaintiff, through oversight and supervision of all school functions, school property, and school student programs. The SAIC is also in charge of the hiring, supervision, management, assignment, control, and regulation of individuals who serve as faculty members, advisors, and staff members.

181.    At all times herein, the students of the SAIC and their parents, including Plaintiff and her parents, reposed great trust and confidence in the SAIC by and through its board members, administrators, faculty, advisors, employees and/or agents, so that it deemed influence, control, and superiority over the students of the SAIC and their parents, including Plaintiff.

182.    SAIC, by and through its board members, administrators, faculty, advisors, employees and/or agents, including the individual Defendants, had a duty to protect Doe from reasonably foreseeable harm on Plaintiff perpetrated by faculty

members in all matters relating to the conduct of the institution.

183.    SAIC, by and through its board members, administrators, faculty, advisors, employees and/or agents received and were aware of multiple reports, allegations, and complaints concerning misconduct of Defendant Phillips involving female students, including sexual harassment and sexual abuse, before Phillips sexually harassed and sexually abused Doe.

184.    That Phillips exercised a degree of power over Doe given Phillips' position of authority and influence over Doe, especially given her disability and Phillips's power to affect Doe's academic standing.

185.    The power disparity between Phillips and the Plaintiff disinclined Plaintiff from protesting or attempting to avoid Phillips outside the presence of third parties who might have protected Doe.

186.    SAIC, through its officials, including but not limited to the individual Defendants, through its acts or omissions, failed to take any steps to protect Doe and/or prevent reasonably foreseeable harm to Doe.

187.    The failure to warn and/or publicly disclose to individual female students, including Plaintiff, of past sexual misconduct against Phillips served the purpose of preventing female students, including Plaintiff, from assessing the safety or lack thereof of working with Phillips and taking advantage of their otherwise normal opportunities for protection.

188.    SAIC, through its officials, including but not limited to the individual Defendants, acted with conscious disregard and reckless indifference to the safety of female students, including Doe.

189.    As a direct and proximate cause of SAIC's indifference and/or conscious disregard for the safety of it students by failing to control or supervise Defendant Phillips, Doe sustained personal, emotional, and pecuniary injuries.

190.    As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

## COUNT XIV
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*.**

191.    Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

192.    Section 504 of the Rehabilitation Act of 1973 ("Section 504") provides that an educational institution receiving federal financial assistance must not deny persons with disabilities the benefits of its programs and activities, an obligation that applies to "all of the operations of . . . a college, university, or other postsecondary institution . . . ." 29 U.S.C. § 794(b)(2)(A).

193.    Because SAIC receives federal financial assistance and is a place of public accommodation, it is subject to Section 504.

194.    Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

195.    SAIC is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

196.    SAIC failed to promptly and appropriately respond to alleged sexual abuse, resulting in Doe being excluded from participation in, being denied the benefits of, or being subjected to discrimination in SAIC education programs or activities in violation of Section 504 of the Rehabilitation Act of 1973.

197.    SAIC intentionally discriminated against Plaintiff because of her disability.

198.    As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to

reputation, harm to career, and harm to her education, and other consequential damages.

## COUNT XV
### ADA – Title III, 42 U.S.C. § 12182

199.    Plaintiff restates and realleges by reference the paragraphs above as though fully set forth herein.

200.    Title III of the Americans with Disabilities Act ("Title III") requires, among other things, that a public accommodation: (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodation; (3) take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals.

201.    Under Title III, places of accommodation include an "undergraduate, or postgraduate private school, or other place of education." 42 U.S.C. § 12181(7)(J).

202.    Because SAIC receives federal financial assistance and is a place of public accommodation, it is subject to Title III.

203.    Title III requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

204.    SAIC operates an "undergraduate, or postgraduate private school, or other place of education," which is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(J).

205.    SAIC has engaged in illegal disability discrimination, as defined by Title III, including without limitation:

      a.   Failing to provide Plaintiff with alternative housing arrangements;

      b.   Locking Plaintiff out of her art studio; and

      c.   Failing to modify policies and procedures in order to accommodate her disability.

206.    As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss of enjoyment of life, future pecuniary losses, harm to reputation, harm to career, and harm to her education, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

A.  All economic damages Plaintiff lost including, but not limited to tuition and housing payments made to SAIC on Plaintiff's behalf;

B.  All academic benefits Plaintiff would have received but for the discrimination;

C.  Compensatory damages in an amount to be determined at trial;

D.  Defendants be required to pay pre-judgment interest to Plaintiff on these damages;

E.  A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

F.  A permanent injunction requiring the Defendants adopt practices and policies in accord and conformity with the requirements of Title IX, the ADA, and Illinois law;

G.  A declaratory judgment that Defendants' actions violate Title IX, the ADA, and Illinois law.

H.  The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

I.  Punitive damages as allowed by law;

J.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

K.  Such other relief as the Court may deem just or equitable.

Respectfully Submitted,

Plaintiff's Attorney

*Electronically filed on June 18, 2018*

Dana L. Kurtz, Esq. (ARDC #6256245)
Heidi Karr Sleper, Esq. (ARDC #6287421)
Jacob Exline, Esq. (ARDC #6326874)
KURTZ LAW OFFICES, LTD.
32 Blaine Street
Hinsdale, IL 60521
Phone: (630) 323-9444
Fax: (630) 604-9444
Email: dkurtz@kurtzlaw.us
Email: hsleper@kurtzlaw.us
Email: jexline@kurtzlaw.us